# United States Court of Appeals for the Federal Circuit

_____

**ROAD AND HIGHWAY BUILDERS, LLC,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

_____

2012-5063

_____

Appeal from the United States Court of Federal Claims in Case No. 09-CV-401, Senior Judge Lawrence S. Margolis.

_____

Decided: December 20, 2012

_____

CARL M. HEBERT, Carl M. Hebert, LTD, of Reno, Nevada, argued for plaintiff-appellant.

MARTIN F. HOCKEY, JR., Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, HAROLD D. LESTER, JR., Assistant Director, and GREGG PARIS YATES, Trial Attorney.

————————————————

Before RADER, *Chief Judge*, LOURIE, *Circuit Judge*, and DANIEL, *Chief District Judge.*[*]

LOURIE, *Circuit Judge*.

Plaintiff-Appellant Road and Highway Builders, LLC ("RHB") appeals from a judgment of the United States Court of Federal Claims holding that RHB failed to meet its burden of proof that the United States Internal Revenue Service ("IRS") acted in bad faith when it entered into a release to redeem certain real property. *See Rd. & Highway Builders, LLC v. United States*, 102 Fed. Cl. 88 (2011). Because RHB failed to rebut the presumption that the IRS agents discharged their duties in good faith by clear and convincing evidence, we *affirm* the entry of judgment against RHB.

## BACKGROUND

This appeal involves an agreement by the IRS to release its right to redeem certain real property at 2640 N. Las Vegas Boulevard, Las Vegas, Nevada ("the property") pursuant to I.R.C. § 7425(d) in return for RHB's payment of $100,000 ("the release").

In 2000, the IRS assigned a taxpayer identification number to then newly-incorporated Crystal Cascades, LLC. In May 2001, Crystal Cascades, LLC changed its name to Crystal Cascades Civil, LLC, but did not notify the IRS of the name change and continued using the originally-issued taxpayer identification number in its tax

———————————

[*] The Honorable Wiley Y. Daniel, Chief District Judge, United States District Court for the District of Colorado, sitting by designation.

filings. In July 2004, deeds of trust were recorded in Clark County, Nevada against the property to secure certain loans made to Crystal Cascades Civil by a Nevada bank. Following failure by Crystal Cascades Civil to fully pay its employment taxes in 2003 and 2004, the IRS caused notices of federal tax liens to be filed in August 2004 and January 2005. However, the lien notices were filed under the taxpayer identification number as known to the IRS and thus directed to "Crystal Cascades, LLC" rather than "Crystal Cascades Civil, LLC." In February 2005, additional deeds of trust were recorded against the property as security for loans made to Crystal Cascades Civil by RHB. In June 2005, the trustee for the Nevada bank, acting as the senior secured creditor, initiated foreclosure proceedings because Crystal Cascades Civil had defaulted on its loan obligations. Crystal Cascades Civil then filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Nevada ("bankruptcy court"), and RHB subsequently filed an adversary proceeding against the IRS in February 2006 arguing seniority over the tax liens. During the contemporaneous foreclosure sale, RHB purchased the property for $1.43 million.

Pursuant to § 7452(d), the IRS has the right to redeem properties against which it has a valid tax lien. Following the February 2006 foreclosure sale, the IRS communicated to RHB that it was willing to release its right of redemption in exchange for suitable consideration. In June 2006, the parties negotiated a settlement agreement whereby RHB paid the IRS $100,000 and the IRS executed a "release of right of redemption" in favor of RHB.

In November 2007, the bankruptcy court held a two-day trial in the adversary proceeding between RHB and

the IRS and concluded that the IRS's notices of federal tax liens did not impart constructive notice to third parties because they were improperly recorded in the name of "Crystal Cascades, LLC" and not "Crystal Cascades Civil, LLC." *In re Crystal Cascades Civil, LLC*, 398 B.R. 23 (Bnkr. D. Nev. 2008). The bankruptcy court also awarded surplus proceeds from the foreclosure sale to RHB, but "express[ed] no opinion on the initial or continuing validity of the transaction by which the IRS received $100,000." *Id.* at 37 n. 17. The IRS appealed the bankruptcy court's ruling, which was affirmed by the Bankruptcy Appellate Panel of the United States Court of Appeals for the Ninth Circuit. *In re Crystal Cascades Civil, LLC*, 415 B.R. 403 (B.A.P. 9th Cir. 2009).

In 2009, RHB sued the United States in the United States Court of Federal Claims seeking return of the $100,000 release payment, asserting that the June 2006 settlement agreement was void for lack of consideration. It argued that the IRS's right of redemption was illusory because the tax liens were later held invalid by the bankruptcy court. After a one-day trial, the Court of Federal Claims held that RHB failed to prove that the IRS acted in bad faith when it entered into the release negotiation. *Rd. & Highway Builders*, 102 Fed. Cl. at 95. The court noted that government officials are presumed to act in good faith, and that presumption stands unless there is clear and convincing evidence to the contrary. *Id.* at 92–93. In light of the evidence, the court found that (i) the IRS's conduct did not give rise to an inference of bad faith because the IRS agents had no reason or responsibility to search for other names used by Crystal Cascades; (ii) RHB failed to demonstrate bad faith on the part of the IRS in negotiating the release; and (iii) RHB failed to demonstrate that the IRS lacked a good faith belief in the validity of its right of redemption. *Id.* at 93–94.

RHB appeals from the judgment of the Court of Federal Claims. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review judgments of the Court of Federal Claims to determine if they are incorrect as a matter of law or premised on clearly erroneous determinations of fact. *Dairyland Power Coop. v. United States*, 645 F.3d 1363, 1369 (Fed. Cir. 2011).

The critical issue in this dispute is whether the IRS official who executed the release acted in bad faith. Forbearance of a right can represent consideration to support an agreement, provided that the forbearing party believes in good faith that its claim or defense may be fairly determined to be valid. *Restatement (Second) of Contracts* § 74(1); *see Aviation Contractor Emps., Inc. v. United States*, 945 F.2d 1568, 1574 (Fed. Cir. 1991) (forbearance of a "right in honest dispute" can represent consideration to support a contract). RHB contends that the IRS did not and could not have had a good faith belief that it had a right to redeem its tax liens against the property pursuant to § 7425(d) when the agency entered into the release agreement. RHB seeks to void the contract on the ground that there was a failure of consideration by the IRS because the agency's purported right to redeem the lien interest was later found invalid in bankruptcy proceedings.

## I. Presumption of Good Faith

We and our predecessor court, the Court of Claims, have long upheld the principle that government officials are presumed to discharge their duties in good faith. *See*

*e.g.*, *Am-Pro Protective Agency v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002); *T & M Distribs., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999); *Torncello v. United States*, 681 F.2d 756, 770–71 (Ct. Cl. 1982); *Schaefer v. United States*, 633 F.2d 945, 948–49 (Ct. Cl. 1980); *Kalvar Corp. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976); *Librach v. United States*, 147 Ct. Cl. 605, 614 (1959); *Knotts v. United States*, 128 Ct. Cl. 489, 492, 121 F. Supp. 630, 631 (1954). As we clarified in *Am-Pro*, it is "well-established . . . that a high burden must be carried to overcome this presumption," amounting to clear and convincing evidence to the contrary. 281 F.3d at 1239–40. Specifically, we described the clear and convincing standard of proof as "impos[ing] a heavier burden upon a litigant than that imposed by requiring proof by preponderant evidence but a somewhat lighter burden than that imposed by requiring proof beyond a reasonable doubt." *Id.* at 1240. We further noted that clear and convincing evidence has been expressed as that "which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Id.* Moreover, a challenger seeking to prove that a government official acted in bad faith in the discharge of his or her duties must show a "specific intent to injure the plaintiff" by clear and convincing evidence. *Id.*

RHB argues that the trial court should not have applied the presumption of good faith to the IRS officials here because RHB did not allege that they engaged in fraudulent or quasi-criminal wrongdoing, but merely that the agency's negligence resulted in a breach of contract. In support of that argument, RHB cites dictum from our opinion in *Am-Pro* and analysis from a decision by the Court of Federal Claims in *Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005), in an attempt to limit the good faith presumption to situations in which a government

official allegedly engaged in fraud or in some other quasi-criminal wrongdoing.  That is not our law.  The plaintiff in *Am-Pro* claimed "duress" when a contracting officer threatened to cancel the plaintiff's contract if it did not agree to certain contractual modifications, and we determined that the presumption of good faith applied notwithstanding that the alleged duress was not fraudulent and did not violate any criminal statute.  *Am-Pro*, 281 F.3d at 1241.  Indeed, as the trial court correctly noted in this case, we have continued to apply the presumption of good faith and the clear and convincing evidentiary standard to cases not involving allegations of fraud or quasi-criminal wrongdoing since our decision in *Am-Pro*.  *See e.g.*, *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1288 (Fed. Cir. 2010) (holding plaintiff failed to rebut presumption of good faith when government was accused of using contract requirements as pretext to circumvent injunction); *Nova Express v. Potter*, 277 F. App'x 990, 993 (Fed. Cir. 2008) (holding plaintiff failed to rebut presumption of good faith where government was accused of terminating contract based on plaintiff's failure to meet contract requirements); *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1335–37 (Fed. Cir. 2004) (holding plaintiff failed to rebut presumption of good faith where government was accused of bias in awarding contracts).  Like the contracting officer in *Am-Pro*, the IRS officials here are accused of "sharp practices" at worst.  We decline to adopt RHB's narrow characterization of *Am-Pro* and agree with the trial court that the IRS officials here are presumed to have discharged their duties in good faith—a presumption that can be overcome only by clear and convincing evidence to the contrary.

## II.  Evidence of Bad Faith

RHB contends that it met a lesser burden of preponderance of the evidence that the IRS could not reasonably have had a good faith belief in the validity of its right of redemption by showing the following: (i) agency officials did not investigate whether Crystal Cascades, LLC was conducting business under other names; (ii) the IRS had already decided that it would not exercise its purported right to redeem before entering negotiations with RHB for a waiver of that right; (iii) the IRS later lost at trial and on appeal in bankruptcy adversary proceedings; and (iv) the IRS's expert witness at the bankruptcy trial testified that an ordinary person searching for liens on the property would not have found the notices of federal tax liens. *See Rd. & Highway Builders*, 102 Fed. Cl. at 93. We agree with the trial court that those facts do not give rise to an inference of bad faith on the part of the IRS, and therefore that RHB failed to demonstrate by clear and convincing evidence that the IRS lacked a good faith belief in the validity of its right to redemption.

First, evidence that the IRS officials failed to verify that the original landowner of the property, Crystal Cascades, LLC, was doing business under any other name before either filing a notice of federal tax lien or negotiating the release does not support a finding of a specific intent to injure RHB. As the trial court noted, the IRS "had no reason or responsibility to search for other names used by Crystal Cascades, LLC." *Id.* Testimony by IRS officials regarding agency practice demonstrated that it was neither expected nor required that Revenue Officers would verify the names of delinquent taxpayers, such as Crystal Cascades, LLC, beyond making sure that the name on the liens matched the name in the agency's collections system. RHB did not dispute this finding, nor identify any other evidence to support a conclusion that the trial court's determination was clearly erroneous.

RHB merely recites the same evidence to argue that the trial court erred in its ruling. Appellant Br. 13–14. That is insufficient to support a ruling that the trial court's findings of fact were clearly erroneous. *Landmark Land Co., Inc. v. FDIC*, 256 F.3d 1365, 1373 (Fed. Cir. 2001).

Second, evidence that the IRS negotiated the release of its right of redemption after having already decided not to exercise that right also does not support a finding of bad faith on its part or clear and convincing proof of a specific intent to injure RHB. The court noted that RHB "failed to cite any evidence or case law to suggest that the IRS is required to release its right to redemption once it decides not to redeem" and that it is standard practice for the agency to "realize value" from the release of a right of redemption in cases where actual redemption may not be feasible. *Id.* at 94. We agree that that does not constitute an improper motive on the part of the Revenue Officer. RHB again does not point to any other evidence to support a determination that the trial court's decision was clearly erroneous.

Third, the fact that a bankruptcy court later held that the IRS's notices of federal tax liens were not properly recorded because they were entered under the name "Crystal Cascades, LLC," instead of "Crystal Cascades Civil, LLC," does not support a finding of specific intent to injure RHB. As the court correctly noted, "[e]ven though the invalidity [of a party's claim] later becomes clear, the bargain is to be judged as it appeared to the parties at the time." *Id.* at 95 (quoting *Restatement (Second) of Contracts* § 74 cmt. b). At the time of the release agreement, there was a legal question in the Ninth Circuit as to what constituted a reasonable inspection of public records. *See Crystal Cascades Civil*, 415 B.R. at 409. But the IRS's position with respect to the validity of the notices of

federal tax liens that gave rise to the right of redemption at issue was supported by case law from other jurisdictions that enforced federal tax liens even after finding an error in the taxpayer's name at the time of the release agreement. *See Crystal Cascades Civil*, 398 B.R. at 29–30.

Finally, RHB emphasizes that the IRS's expert witness in bankruptcy court testified that the average reasonably diligent user looking for liens on property owned by Crystal Cascades Civil would not have found the notices of federal tax liens. While that testimony could indicate that the IRS acted unreasonably, it does not suggest that the IRS acted in bad faith. The court carefully reviewed the record, considered the testimony, and evaluated the credibility of witnesses at trial to support its conclusion that RHB did not show by clear and convincing evidence that the IRS acted in bad faith.

CONCLUSION

For the reasons stated above, we conclude that the Court of Federal Claims did not err in holding that RHB failed to rebut the presumption by clear and convincing evidence that the IRS agents discharged their duties in good faith. The judgment of the Court of Federal Claims in favor of Defendant-Appellee is

**AFFIRMED**